UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D'ARRIGO BROS CO. OF NEW YORK, INC.,<br><br>        Plaintiff,<br><br>     v.<br><br>GRAMERCY PRODUCE INC., ANTHONY J. VIVACQUA, SR., ANTHONY J. VIVACQUA, JR., SALVATORE V. VIVACQUA,<br><br>        Defendants. | 24 Civ. 4841 (DEH)<br><br>**MEMORANDUM OPINION** |

DALE E. HO, United States District Judge:

  Plaintiff D'Arrigo Bros. Co. of New York, Inc. ("Plaintiff" or "D'Arrigo") seeks a preliminary injunction against defendants Gramercy Produce Inc. ("Gramercy"), Anthony J. Vivacqua, Sr., Anthony J. Vivacqua, Jr., and Salvatore V. Vivacqua (collectively, "Defendants") under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, et seq. ("PACA"). *See* ECF No. 10. The Court previously denied Plaintiff's emergency motion for an *ex parte* temporary restraining order and ordered opposition and reply briefing on Plaintiff's Motion for Preliminary Injunction. *See* ECF No. 17. Upon consideration of the parties' complete submissions, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.

## BACKGROUND

  D'Arrigo and Gramercy are each in the business of buying and selling wholesale quantities of produce in interstate commerce and are subject to and licensed under PACA. Roman Decl. ¶¶ 3-4, ECF No. 11. Between April 9, 2024, and May 17, 2024, Plaintiff sold Defendants $178,104.25 worth of produce for which they did not receive payment. *See id.* ¶¶ 8, 10. Defendants apparently accepted the produce without protest. *Id.* ¶ 10. Plaintiff alleges that

it "timely deliver[ed] invoices to Defendants which contained the language required under Section 5(c)(4) of PACA, 7 U.S.C. § 499e(c)(4)," to preserve its interest in a statutory trust under PACA. *Id.* ¶ 11. Plaintiff alleges that in March, Gramercy "started bouncing checks it had given . . . in partial payment of its produce debt." *Id.* ¶ 12. In May, Plaintiff began discussions with Defendants to come up with a payment plan, but Plaintiff alleges that Defendants "could not afford to make even the least aggressive payment plan [Plaintiff was] willing to offer." *Id.* ¶ 13. Plaintiff therefore concluded that Defendants were in breach of their statutory trust obligations under PACA and were dissipating the trust assets. *Id.* ¶¶ 13-14.

Defendants respond that "Gramercy's long standing relationship with D'Arrigo created a course of dealing" under which "Gramercy purchased produce from D'Arrigo on a daily basis and Gramercy was later provided with weekly invoices for the prior week's purchases." Vivacqua Decl. ¶ 5, ECF No. 22. While "[t]he invoices did not expressly provide payment terms," Defendants attest that "it was not uncommon over these years for D'Arrigo to extend four weeks credit to Gramercy." *Id.*

## LEGAL STANDARDS

A plaintiff seeking a preliminary injunction must show: "(1) a likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of the injunction." *Res. Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 114 (2d Cir. 2024).[1] "A preliminary injunction is an extraordinary and drastic

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

2

remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007).

## DISCUSSION

Congress enacted PACA in 1930 "to regulate the interstate sale and marketing of perishable agricultural commodities, with a view to protecting growers and sellers of agricultural produce against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 874 (2d Cir. 2021) (citation omitted). In 1984, Congress amended PACA to provide additional protections to sellers "in the wake of a sharp increase in defaults among buyers." *Id.* Congress added § 499e(c), which requires dealers to hold sales proceeds "in trust for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the sums owing in connection with such transactions has been received by such unpaid supplier [or] seller." *Id.* at 874-75 (quoting 7 U.S.C. § 499e(c)(2)). Under PACA, a produce dealer must make "full payment promptly" for any produce that it purchases. 7 U.S.C. § 499b(4).

Under regulations promulgated by the Secretary of Agriculture, "[t]he maximum time for payment for a shipment to which a seller, supplier, or agent can agree, prior to the transaction, and still be eligible for benefits under the trust is 30 days after receipt and acceptance of the commodities." 7 C.F.R. § 46.46(e). The Second Circuit has explained that, in order to be entitled to PACA's "extraordinary protection," "a seller seeking PACA trust protection must be selling produce on a cash or short-term credit basis." *Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A.*, 362 F.3d 33, 42 (2d Cir. 2004). The Circuit observed that "nothing in the text of PACA, in its legislative history, or in its implementing regulations indicates that PACA's super-priority was intended to benefit sellers who dealt in other than short-term credit." *Id.* at 38.

Thus, under the regulations, "[s]ellers who offer payment periods of longer than thirty days are not entitled to PACA trust protection." *Id.* at 43.

Interpreting a prior version of § 46.46(e), the Second Circuit in *American Banana* held that "where . . . a seller agrees—orally or in writing—to a payment period exceeding thirty days, it forfeits trust protection." *Id.* at 47. At the time, § 46.46(e) did not contain the phrase "prior to the transaction," leading the Second Circuit to hold, additionally, that *post*-default agreements to payment periods of longer than 30 days also result in forfeiture of PACA trust protection. *See id.* at 45. The Secretary of Agriculture subsequently amended § 46.46(e) to clarify that it applies only to agreements made "prior to the transaction," not to agreements to extend the payment period after a party defaults. *See* 76 Fed. Reg. 20217 (Apr. 12, 2011). Although the Second Circuit has not revisited its holding in *American Banana* since the 2011 amendment, a court in this District has held that a course of dealing in which the parties agreed to payment periods of longer than 30 days can be evidence of a prior agreement that forfeits PACA protections under the 2011 regulation. *See A & J Produce Corp. v. City Produce Operating Corp.*, No. 10 Civ. 5610, 2011 WL 6780614, at *5 (S.D.N.Y. Dec. 23, 2011); *accord Spada Props., Inc. v. Unified Grocers, Inc.*, 121 F. Supp. 3d 1070, 1085-87 (D. Or. 2015). "A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." *A & J Produce Corp.*, 2011 WL 6780614, at *5 (quoting Restatement (Second) of Contracts § 223(1) (1981)).

Plaintiff has not made a "*clear showing*," *Sussman*, 488 F.3d at 139, that it is likely to succeed on the merits of its PACA claim, because the record before the Court is unclear whether, under the parties' longstanding course of dealing, they agreed to payment more than 30 days after receipt and delivery of commodities, thus depriving Plaintiff of PACA's extraordinary

4

protections. In support of its motion for preliminary injunction, Plaintiff submitted an account statement, dated June 24, 2024, showing a log of Gramercy's unpaid invoices, credits, payments, and bounced checks over the relevant period. *See* Roman Decl. Ex. C at 2-4, ECF No. 11-3. The account statement includes columns entitled "Inv. Date" and "Due Date," presumably indicating the date of the invoice and the date payment was due for each transaction. *See id.* The due date is consistently 28 days after the invoice date. *See id.* Plaintiff also submitted the invoices themselves, all of which are dated June 24, 2024 at the top right and left of the document, but which appear to reflect invoices dating back to April 2024. *See id.* at 5-28. The invoices include a column with the heading "Date" that appears to match the "Inv. Date" column in the account statement. For example, Invoice No. 01220196 lists "04/09/2024" in the "Date" column, *id.* at 5-6, which corresponds to the earliest date in the "Inv. Date" column for that same invoice in the account statement, *id.* at 2.

Although the "Due Date" in the account statement is consistently 28 days after the "Inv. Date," the record before the Court at this stage is unclear whether "Inv. Date" is the date the produce was actually delivered or a later date on which the invoice was sent to Defendants. *See id.* at 2-4. That is critical because it is the date on which the produce deliveries were made that starts the 30-day window in which a seller may extend credit and continue to receive PACA's protections. And here, Defendants represent that under the parties' longstanding course of dealing, "Gramercy purchased produce from D'Arrigo on a daily basis and Gramercy was *later* provided with weekly invoices for the prior week's purchases," and that "it was not uncommon . . . for D'Arrigo to extend four weeks credit to Gramercy." Vivacqua Decl. ¶ 5 (emphasis added). Plaintiff does not dispute this characterization in its reply. *See* Pl.'s Reply Supp. Prelim. Inj., ECF No. 23. As with the invoices, Defendants' declaration is somewhat ambiguous: it is not clear whether the four weeks' credit that was "not uncommon" refers to four weeks from the

5

date of delivery or four weeks from the date of the invoice. If the latter—that is, if the invoices were sent the week after the produce was delivered, and there was a "not uncommon" mutual understanding that payment was due four weeks after the invoices were sent—that would appear to suggest a course of dealing under which Gramercy could regularly extend payment beyond 30 days after delivery. *See A & J Produce Corp.*, 2011 WL 6780614, at *5. And if that is the case, Plaintiff may not be entitled to PACA's trust protections.

Accordingly, the Court holds that Plaintiff has not carried its burden at this stage to demonstrate, by a *clear showing*, that it is likely to succeed on the merits of its claim sufficient to warrant the extraordinary remedy of preliminary relief.[2] *See Sussman*, 488 F.3d at 139. Because the first preliminary injunction factor is not satisfied, the Court declines to address the remaining factors. *See Res. Grp. Int'l Ltd.*, 91 F.4th at 114.

## CONCLUSION

Plaintiff's Motion for Preliminary Injunction is **DENIED**. The Clerk of Court is respectfully requested to terminate ECF No. 10. By **January 22, 2025**, the parties shall file a Proposed Case Management Plan and Scheduling Order, and a joint status letter providing the following information: (1) a brief description of any discovery that has already taken place and of any discovery that is necessary for the parties to engage in meaningful settlement negotiations; (2) a brief description of the status of prior settlement discussions, without disclosing exact offers and demands; (3) a statement confirming that the parties have discussed the use of alternate dispute resolution mechanisms and indicating whether the parties believe that (a) a settlement conference before a Magistrate Judge; (b) participation in the District's Mediation

---

[2] To be clear, the Court does not hold that Plaintiff is *not* entitled to PACA trust protection, only that the submissions at the preliminary injunction stage do not clearly show that they are.

Program; and/or (c) retention of a privately retained mediator would be appropriate and, if so, when; and (4) any other information that the parties believe may assist the Court in advancing the case to settlement or trial.

    SO ORDERED.

Dated: January 8, 2025
       New York, New York

                                                     DALE E. HO
                                        United States District Judge